(C. D. 1105)

PENNSYLVANIA RAILROAD *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 6, 1948)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* and *Eugene F. Blauvelt* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: Certain damaged wheat flour entered for warehouse at the port of New York on January 23, 1943, is claimed to have been erroneously classified for duty purposes by the collector of customs. It was manipulated in warehouse pursuant to the provisions of section 562 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, by the addition of fish meal. Thereafter it was classified and assessed for duty at 20 per centum ad valorem under the provisions of paragraph 1558 as a nonenumerated manufactured article. The plaintiff claims that it is a "mixed feed" and dutiable at 5 per centum ad valorem under paragraph 730 of the Tariff Act of 1930, as amended by the trade agreement with Canada (T. D. 49752).

At the trial counsel for the plaintiff stated:

We have agreed on a statement of facts on which the case will be submitted. The statement is as follows:

That on December 18, 1942, 3,000 bags of wheat flour arrived at the port of Buffalo, New York, and were on that date transshipped to the port of New York, N. Y., under "Transportation and Exportation Bonds" numbered 8401, 8402, 8403, 8406 and 8409, copies of which are attached to the papers in the present case. The merchandise was destined for exportation from the port of New York, for England.

While being loaded at the port of New York on the exporting vessel, for exportation to England, the wheat flour was damaged by river water. The flour was not exported.

Under date of January 23, 1943, warehouse bond entry 25246 was made at the port of New York for the 3,000 bags of wheat flour. 198 bags were found upon examination by the Federal Security Agency to have been undamaged, and were withdrawn for consumption, and duty paid thereon as flour under paragraph 729 at $1.04 per 100 pounds. The said 198 bags are not involved in the present case.

The remaining 2,802 bags were examined by the Federal Security Agency and found to be unfit for human consumption; but the said Federal Security Agency granted permission to the importer to denature the said flour in such a manner that it would be unsuitable for human food use, by mixing the same with 5 per cent of fish meal. Upon permission therefor being granted by the Secretary of the Treasury, and under Customs supervision, the said flour was so mixed with 5

per cent of fish meal in a bonded warehouse, on October 6, 1943, and repacked into 3,983 bags, under the provisions of Section 562, Tariff Act of 1930.

The said 3,983 bags were thereafter withdrawn for consumption, upon payment of duties at the rate of 20 per cent ad valorem under paragraph 1558, Tariff Act of 1930.

The product contained in the said 3,983 bags was unfit for human consumption and was fit for use and was used solely as a feed for ducks after being mixed with other feedstuffs such as meat scraps, corn meal, bran, or alfalfa leaf meal.

The said warehouse bond entry 25246 was thereafter liquidated and duties assessed on the said merchandise at 20 per cent ad valorem under paragraph 1558.

I offer to agree to that statement of facts as being true and correct.

Mr. VITALE: After a careful examination of all the facts in this case, and after a thorough investigation, the Government is willing to so stipulate.

It was further agreed between counsel that the case be suspended awaiting the decision in the case of *Southwestern Sugar & Molasses Co.* v. *United States*, 18 Cust. Ct. 128, C. D. 1056, involving an article known as "Pasto Miel," a mixture containing grain and other feedstuffs suitable for feeding in its imported condition, which was held classifiable as a mixed feed. The court stated in that case that—

\* \* \* While every mixture of grain and other ingredients may not be a mixed feed, we think that a product which is suitable for feeding in its imported condition and which forms a proper part of an animal's ration, if within the descriptive terms of paragraph 730, is a mixed feed within the meaning of the tariff act.

The court there also distinguished the case of *Walter Johnson* v. *United States*, 21 C. C. P. A. 129, T. D. 46464, stressing the holdings of the appellate court that the merchandise must be suitable for feeding in the condition imported in order to be considered a mixed feed, although it need not be a completely balanced ration.

In view of the foregoing decisions, we are of the opinion that the presumption of correctness of the collector's classification has not been overcome. There is no evidence before the court to support a finding that the product here is suitable for feeding in its condition as withdrawn from the warehouse. The only evidence we have is that it is used as a duck feed *"after* being mixed with other feedstuffs such as meat scraps," etc. [Italics supplied.] In the *Johnson* case, *supra,* the court construed the mixed feed provided for in paragraph 730, as follows:

\* \* \* \* \* \* \*

A fair construction of the statute is that the language "mixed feeds," as appearing therein, does not mean that any product is comprehended within the meaning of said terms which comprises a mixture of substances which, in themselves, might be used as components of feeds, but it should rather be construed to mean, as held by the court below, a product which, in itself, as imported, is fit for use as an animal feed.

Certainly the product before the court does not fall within the category of a mixed feed ready for use. Judgment will therefore be entered in favor of the Government.